UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MONICA CONYERS,

      Plaintiff,

v.                                                              Case No.  22-11152

CATHY M. GARRETT in her                    Sean F. Cox
official capacity as Wayne County Clerk,        United States District Court Judge

      Defendant.
_____/

## MEMORANDUM OPINION
## DENYING PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

In this civil action, Plaintiff Monica Conyers ("Conyers") challenges the constitutionality

of an amendment to the Michigan Constitution, article 11, § 8, ("the Amendment") which makes

a person who within the immediately preceding 20 years has been convicted of a felony

involving dishonesty, deceit, fraud, or a breach of the public trust, ineligible for election or

appointment to public office, if the conviction was related to that person's official capacity while

holding an elected or appointed office.

Conyers has a 2009 felony criminal conviction for accepting a bribe while she was

serving as a Member of the Detroit City Council.  Nevertheless, Conyers filed an Affidavit of

Identity and fee, to qualify as a candidate for the elected office of Wayne County Executive.

Two parties filed challenges to Conyers's candidacy with Defendant Cathy M. Garrett, Wayne

County Clerk ("Clerk Garrett").  On May 13, 2022, Clerk Garrett upheld the challenge, ruling

that Conyers is not eligible for the office of Wayne County Executive due to the Amendment.

Two weeks after that decision, Conyers filed this action, along with a motion seeking a

preliminary injunction.

Conyers's Motion for Preliminary Injunction asks the Court to order Clerk Garrett to place Conyers's name on the primary ballot.  The motion is opposed by Clerk Garrett, and is also opposed by Michigan Attorney General Dana Nessel, who intervened in this case in order to defend the constitutionality of the amendment.

The parties agreed, on the record, that an evidentiary hearing is not needed.  The Court heard oral argument on June 2, 2022, after extremely expedited briefing.  The expedited briefing and hearing were necessary because the Election Committee is set to meet on either June 3, 2022, or June 6, 2022 to finalize names on the primary ballot, with ballot printing to be done forthwith.  Given the time-sensitive nature of the matter, and mindful that Conyers may wish to pursue an interlocutory appeal of this Court's ruling, the Court issued an Order denying the motion on June 3, 2022.  The Court now issues this Memorandum Opinion, in order to set forth its analysis and reasoning behind that decision.

## BACKGROUND

Clerk Garrett is the duly elected Clerk for the County of Wayne.

Conyers is an individual who resides in Wayne County, Michigan.  Conyers was elected to the Detroit City Council and served from 2005 to 2009.

In Criminal Case Number 09-20025, in the United States District Court for the Eastern District of Michigan, Conyers was charged with a federal felony offense.  On June 26, 2009, Conyers pleaded guilty to Conspiracy to Commit Bribery Concerning Programs Receiving Federal Funds, in violation of 18 U.S.C. §§ 371 & 661(a), for accepting a bribe while she was serving as Detroit City Council President Pro Tem.

On March 10, 2010, Conyers was sentenced to a prison term of 37 months by the

Honorable Avern Cohn, who presided over her criminal case.

"Article 11, § 8 was added to the Michigan Constitution by amendment after a statewide vote in the November 2010 general election." *Paquin v. City of St. Ingnace*, 504 Mich. 124, 130 (2019).  It provides:

> A person is ineligible for election or appointment to any state or local elective office of this state and ineligible to hold a position in public employment in this state that is policy-making or that has discretionary authority over public assets if, within the immediately preceding 20 years, the person was convicted of a felony involving dishonesty, deceit, fraud, or a breach of the public trust and the conviction was related to the person's official capacity while the person was holding any elective office or position of employment in local, state, or federal government. This requirement is in addition to any other qualification required under this constitution or by law.
>
> The legislature shall prescribe by law for the implementation of this section.[1]

M.C.L.A. Const. Art. 11, § 8.  The Amendment went into effect on December 18, 2010.

In 2012, Conyers was released from prison after having served her criminal sentence imposed in Criminal Case Number 09-20025.

Some ten years later, on April 19, 2022, Conyers filed with Clerk Garrett her Affidavit of Identity and fee, to qualify as a candidate for the elected office of Wayne County Executive.

Shortly thereafter, on April 22, 2022, two parties filed challenges to Conyers's candidacy for Wayne County Executive with Clerk Garrett's office.  The candidacy challenges alleged that, pursuant to the Amendment, Conyers is ineligible to seek the office of Wayne County Executive.

---

[1]It does not appear that any implementing legislation has been passed. *See Op. Atty Gen. 2013*, No. 7273, 2013 WL 4490318.  Attorney General Bill Schuette issued an opinion concluding that Section 8 is self-executing and applies absent implementing legislation.  That opinion states that the elements are: 1) the office sought is a state or local elective office; 2) the conviction is a felony involving dishonesty, deceit, or fraud, and is within the immediately preceding 20 years; 3) the conviction related to the person's official capacity; and 4) the positions constitute an elective or employment position within local government. *Id.*

3

Acting through counsel, on April 29, 2022, Conyers responded in writing to Clerk Garrett, as to the challenges to her candidacy.

On May 13, 2022, Clerk Garrett upheld the challenges, ruling that Conyers is not eligible for the office of Wayne County Executive due to Article XI, Section 8 of the Michigan Constitution.  (Clerk Garrett's 5/13/22 Letter, ECF No. 3-2).  Clerk Garrett explained that "[a]fter reviewing the filed challenges, the response provided by Ms. Conyers, and under the advice of counsel, I have determined that according to Article XI, Sec. 8 of the Michigan Constitution, Ms. Conyers conviction in 2009 seems her ineligible for election the preceding 20 years.  Ineligible for election means ineligible to be placed on a ballot."  (*Id.)*.

Two weeks later, on May 26, 2022, Conyers filed this action against Clerk Garrett, challenging the constitutionality of the amendment, and filed a motion seeking either a temporary restraining order or a preliminary injunction.

The front page of Conyers's complaint notes "Claim of unconstitutionality" in the caption.  But Conyers did not file a Notice of Constitutional Challenge under Fed. R. Civ. P. 5.1 in this case.

Conyers's Complaint against Clerk Garrett asserts the following four counts: 1) "Violation of Const. Art. I, § 10 Prohibition Against Ex Post Facto Laws" (Count I); 2) "Fourteenth Amendment Procedural Due Process Violation" (Count II): 3) "Violation Of The Fourteenth Amendment Equal Protection" (Count III); and 4) "Violation Of The First Amendment" (Count IV).  Conyers seeks the following relief: 1) a declaration that the constitutional amendment at issue in this case violates Conyers' rights under the United States Constitution; 2) both a preliminary and a permanent injunction, "barring Defendant from

4

denying Conyers access to the ballot and allowing her name to be placed on the August 2, 2022,

primary ballot;" and 3) an award of costs and attorney fees under 42 U.S.C. § 1988.

Conyers's Motion for TRO and/or Preliminary Injunction asks the Court to restrain and

enjoin Clerk Garrett, from denying Plaintiff Monica Conyers from being named on the August 2,

2022 primary ballot as a candidate for Wayne County Executive.   Thus, as her counsel

acknowledged at the hearing in this matter, Conyers asks this Court to order Clerk Garrett to

place Conyers's name on the ballot as a candidate for Wayne County Executive.  Conyers asserts

that "[t]here is no recourse if the ballots are printed, and the amendment is subsequently deemed

unconstitutional on its face or as applied to Conyers."  (Pl.'s Motion, ECF No. 3 at PageID.97).

Thus, the date of the ballot printing is critical.

This Court held a Status Conference on May 31, 2022, to discuss the pending Motion for

Preliminary Injunction.  At that conference, counsel for Conyers advised that she did not want or

need an evidentiary hearing.  Both parties then agreed, on the record, that no evidentiary hearing

is needed.  At the May 31st conference, counsel for Clerk Garrett advised that the Election

Commission is planning to meet on either Friday June 3, 2022, or Monday June 6, 2022, to

finalize the candidates that will appear on the August 2, 2022 ballot.  Very soon after that

meeting, the approved ballot will be sent out for printing.  Counsel for Conyers and Clerk Garrett

advised the Court that neither of them had contacted the Michigan Attorney General's Office, to

advise of this case.  They agreed that they would immediately contact the Michigan Attorney

General's Office.  Given the timing of the printing of ballots, this Court ordered a very expedited

briefing schedule, with Clerk Garrett's response brief due by 5:00 p.m. on June 1, 2022.  The

Court set the motion to be heard on June 2, 2022, at 10:00 a.m.

The following morning, June 1, 2022, Michigan Attorney General Dana Nessel filed a motion seeking to intervene in this case, that was not opposed by the parties, and was granted by this Court.  The Attorney General filed a brief in opposition to Conyers's Motion for Preliminary Injunction later than same afternoon.

This Court heard oral argument on the motion on June 2, 2022.  During the hearing, Counsel for Conyers was reading from a document, that she described as legislative history, that was not provided to either this Court or the Attorney General prior to the hearing.  This Court advised that, given the time constraints at issue, it would not consider additional materials that had not previously been provided to the Court or the opposing parties.

## ANALYSIS

"A preliminary injunction is an extraordinary measure that has been characterized as 'one of the most drastic tools in the arsenal of judicial remedies.'" *Bonnell v. Lorenzo*, 241 F.3d 800, 808 (6th Cir. 2001) (citation omitted).

"In gauging requests for a preliminary injunction, district courts look at four factors: (1) the plaintiff's likelihood of success on the merits; (2) the risk of irreparable harm to plaintiffs absent injunctive relief; (3) the risk of harm to others resulting from an injunction; and (4) the broader public interest." *A1 Diabetes & Med. Supply v. Azar*, 937 F.3d 613, 618 (6th Cir. 2019). These "factors are to be balanced, not prerequisites to be met." *S. Glazer's Distibs. of Ohio, LLC v. Great Lakes Brewing Co.*, 860 F.3d 844, 849 (6th Cir. 2017).

Where material facts are not in dispute, or where facts in dispute are not material to the preliminary injunction sought, a district court need not hold an evidentiary hearing.  *Nexus Gas Trans., LLC v. City of Green, Ohio*, 757 F. App'x 489, 496-97 (6th Cir. 2018).  Here, counsel for

Conyers advised this Court that an evidentiary hearing was not requested or needed.  The parties

then agreed, on the record, that an evidentiary hearing is not necessary.  (*See* 5/31/22 Tr.).

The movant bears the burden of demonstrating entitlement to the preliminary injunction

sought, and this burden is a heavy one.  A preliminary injunction should be granted only if the

movant carries his or her burden of proving that the circumstances clearly demand it.  *Leary v.*

*Daeschner,* 228 F.3d 729, 739 (6th Cir. 2000).

This already stringent burden is even more difficult to meet where a plaintiff seeks an

injunction not to maintain the status quo pending resolution of the case, but to obtain affirmative

relief.  *See, eg.*, *Tom Doherty Assocs., Inc. v. Saban Entm't, Inc*., 60 F.3d 27, 34 (2d Cir. 1995);

*Glauser-Nagy v. Med. Mut. of Ohio*, 987 F.Supp. 1002, 1011 (N.D. Ohio 1997).  That is because

"[t]he purpose of a preliminary injunction is merely to preserve the relative positions of the

parties until a trial on the merits can be had."[2]  *Certified Restoration Dry Cleaning Network,*

*L.L.C. v. Tenke Corp*., 511 F.3d 535, 542 (6th Cir. 2017).  Here, Conyers is not asking to

maintain the status quo.  Rather, she asks this Court to order Clerk Garrett to place her name on

the August 2, 2022 primary ballot.

Moreover, as the Attorney General stresses, "[a]s a general rule, last-minute injunctions

changing election procedures are strongly disfavored."  *Service Emp. Int'l Union v. Husted*, 698

F.3d 341, 345 (6th Cir. 2012) (citing *Purcell v. Gonzalez*, 549 U.S. 1, 4-5 (2006)).

In her brief, the Attorney General argues that Conyers's claims are untimely and asserts

the defense of laches.  An action may be barred by the equitable defense of laches if: 1) the

---

[2]A district court's findings of fact and conclusions of law in addressing a motion seeking
a preliminary injunction are not binding on a trial on the merits.  *Id.*

plaintiff delayed unreasonably in asserting her rights; and 2) and there is a resulting prejudice to the opposing party. *Brown-Graves v. Central States, Southwest and Southwest Areas Pension Fund*, 206 F.3d 680, 684 (6th Cir. 2000). The Attorney General's position appears well-taken, as Conyers could have challenged the Amendment several years ago, but chose not to do so. Conyers further waited *two weeks* after Clerk Garrett's May 13, 2022 decision before filing this action. And when Conyers did file this action, she *did not* file a notice of the constitutional challenge, pursuant to Fed. R. Civ. P. 5.1, and did not otherwise notify the Attorney General of this action. This Court concludes that Conyers actions, and inactions, have prejudiced the Attorney General in that they resulted in her having less than twenty-four hours to file her brief opposing the motion, defending the constitutionality of the Amendment, and addressing four separate claims. Nevertheless, the Court will not deny the motion based upon laches because the Court concludes that Conyers has failed to meet her burden of establishing a likelihood of success on the merits of her claims in any event.

## II.     Substantial Likelihood Of Success On The Merits Of Plaintiff's Claims

While no one factor is controlling, when a party seeks a preliminary injunction on the basis of a potential constitutional violation, the likelihood of success on the merits will often be the determinative factor. *Obama for America v. Husted*, 697 F.3d 423, 436 (6th Cir. 2012) (citing *Jones v. Caruso*, 569 F.3d 258, 265 (6th Cir. 2009)). Thus, the Court starts its analysis by considering whether Conyers has demonstrated that she has a likelihood of success on the merits of her claims.

Conyers's motion asserts that she has a likelihood of success on the merits as to all four of her claims in this action.

8

A.      **"Violation of Const. Art. I, § 10 Prohibition Against Ex Post Facto Laws"**

In Count I, Conyers contends that the Amendment, as applied to her, is an impermissible ex post facto law.

The United States Constitution prohibits states from imposing ex post facto laws.  U.S. CONST. art. I, sec. 10, cl. 1.  The clause is construed broadly to include all legislative acts, "no matter what their form" to include constitutional amendments. *See United States v. Brown*, 381 U.S. 437, 447 (1965) (discussing *Cummings v. Missouri*, 71 U.S. 277 18 L. Ed. 356 (1866)).

"The Ex Post Facto Clause is implicated where a law punishes retrospectively: 'a law is retrospective if it changes the legal consequences of acts committed before its effective date.'" *Doe v. Bredesen*, 506 F.3d 998, 1003 (6th Cir. 2007) (quoting *United States v. Davis*, 397 F.3d 340, 347 (6th Cir. 2005)).

Notably, the "focus of the ex post factor inquiry" is "not whether a legislative change produces some ambiguous sort of 'disadvantage' . . . but on whether any such change alters the definition of criminal conduct or increases the penalty by which the crime is punishable.'" *Dyer v. Bowden*, 465 F.3d 280, 289 (6th Cir. 2006) (quoting *California Dep't of Corr. v. Morales*, 514 U.S. 499, 506 n.3, 115 S.Ct. 1597, 131 L.Ed.2d 588 (1995)).

In evaluating an ex post facto claim such as the one brought by Conyers, this Court's first task is to ascertain whether the legislature meant to establish "civil proceedings" or whether the intent of the legislature was to "impose punishment."  *Doe v. Bredesen*, 507 F.3d at 1003.  "If the intent of the legislature was to impose punishment, that ends the inquiry."  *Id*.  But if the intention was to enact a "regulatory scheme that is civil and nonpunitive," then this Court is to "further examine whether the statutory scheme is so punitive either in purpose or effect" as to

9

negate the State's intention to deem it civil. *Id*. (citations omitted).

"A court will reject the legislature's manifest intent only where a party challenging the Act provides the clearest proof that the statutory scheme is so punitive either in purpose or effect as to negate the state's intention." *Seling v. Young*, 531 U.S. 250, 261, 121 S.Ct. 727, 734, 148 L.Ed.2d 734 (2001); *see also Doe, supra*, at 1003 ("Because we 'ordinarily defer to the legislature's stated intent . . . only the clearest proof will suffice to override legislative intent and transform what has been denominated a civil remedy into a criminal penalty . . .").

Here, Conyers alleges that the challenged Amendment was created to punish a specific public official. (*See* Pl.'s Br. at 6) (Claiming "it is undisputed that the sole intent of the Legislature amending the Michigan Constitution was to punish a specific public official who at the time was facing criminal charges and vowed 'to make a comeback.'"). But that assertion is not undisputed in this case. And Conyers has not provided the Court with any evidence to support her allegation.

From the text of the Amendment itself, the intent appears to be expressed as a regulatory objective – setting forth qualifications for the State's officeholders in order to protect citizens from individuals who have used their elected or appointed office to commit felony crimes. *See De Veau v. Braisted,* 363 U.S. 144, 160, 180 S.Ct. 1146, 4 L.Ed.2d 1109 (1960) ("The proof is overwhelming that New York sought not to punish ex-felons, but to devise what was felt to be a much-needed scheme of regulation of the waterfront, and for the effectuation of that scheme it became important whether individuals had previously been convicted of a felony.").

Nevertheless, this Court must still analyze "the practical effect" of the challenged Amendment. To do this, courts consider the factors in *Kennedy v. Mendoza-Martinez*, that

10

include (but are not limited to) whether the sanction: 1) involves an affirmative disability or restraint; 2) has historically been regarded as a punishment; 3) comes into play only on a finding of scienter; 4) its operation will promote the traditional aims of punishment – retribution and deterrence; 5) the behavior to which it applies is already a crime; 6) has an alternative purpose to which it may rationally be connected is assignable for it, and

7) appears excessive in relation to the alternative purpose assigned. *Kennedy v. Mendoza-Martinez*, 372 U.S. 144, 169, 83 S. Ct. 554, 568, 9 L. Ed. 2d 644 (1963). These factors are all "relevant to the inquiry, and may often point in differing directions." *Id*.

Although Conyers's brief only addresses four of the seven factors, this Court shall consider each one.

The Court first considers whether the Amendment involves an affirmative disability or restraint. As to this factor, Conyers's brief simply states: "Whether the sanction involves disability or restraint: This is a clear restraint on running for an elected office and voting for the person that most aligns with your beliefs." (Pl.'s Br. at 7). She does not direct the Court to any legal authority that supports her position on this factor.

The Attorney General argues that the Amendment "imposes no 'affirmative disability or restraint,' a phrase which has been read to mean imprisonment or something similar." (AG's Br. at 8-9).

This Court agrees. This first "*Kennedy* factor, an affirmative disability or restraint, 'is some sanction approaching the infamous punishment of imprisonment." *Cutshall v. Sundquist*, 193 F.3d 466, 474 (6th Cir. 1999); *see also Herbert v. Billy*, 160 F.3d 1131, 1137 (6th Cir. 1998) ("An 'affirmative disability or restraint' generally is some sanction 'approaching the infamous

punishment of imprisonment.").  In *Hudson v. United States,* 522 U.S. 93, 104, 118 S.Ct. 488, 139 L.Ed.2d 450 (1997), "indefinite disbarment from participating in the banking industry was insufficient to rise to such 'infamous punishment' of imprisonment."  *Herbert*, 160 F.3d at 1137. The Amendment at issue here does not impose an affirmative disability or restraint as it is less severe than the sanction upheld in *Hudson*.  *Herbert, supra*.  Thus, this factor weighs in favor of finding a civil purpose or effect.

The second factor is whether the sanction has historically been regarded as a punishment. Conyers argues it has and the Attorney General concedes that this factor weighs in favor of Conyers.

Third, the Court considers whether the Amendment comes into play only on a finding of scienter.  As the Attorney General notes, the Amendment "contains no scienter requirement, needs no finding of willfulness, and mentions no mens rea.  The mere fact of a conviction, along with the type of crime and the fact that it was in connection with the person's official capacity as a government employee, suffices."  (AG's Br. at 9).  And Conyers does not argue otherwise. Thus, this factor weighs in favor of a finding of civil purpose or effect.

The fourth factor is whether the operation of the Amendment will promote the traditional aims of punishment – retribution and deterrence.  In addressing this factor, the Attorney General focuses on the Amendment's purpose.  (AG's Br. at 10).  But this factor looks at whether the *operation* of the Amendment will promote the traditional aims of punishment.  This Court concludes that a side effect of the Amendment may well be deterrence, but that does not convert "a civil statute into a criminal penalty."  *Rivera v. Pugh*, 194 F.3d 1064, 1069 (9th Cir. 1999). That is because "[T]he mere presence of this purpose is insufficient to render a sanction criminal,

as deterrence may serve civil as well as criminal goals.' " *Id*. (quoting *Hudson*, 118 S.Ct. at 496).

As to the fifth factor, the Attorney General concedes that the Amendment applies to behavior that is already a crime.

The sixth factor is whether the Amendment has "a rational connection to a nonpunitive purpose." *Doe v. Bredesen*, 507 F.3d at 1006. The Attorney General states that the Michigan Legislature's alternative purpose here was to ensure that, for certain elected and appointed officers, the State only placed its trust in those who had not already betrayed that trust. "Where there is such a rational connection to a nonpunitive purpose, it is not for the courts to second-guess the state legislature's policy decision as to which measures best effectuate that purpose." *Doe*, 507 F.3d at 1006. And Conyers does not argue otherwise, having not addressed this factor. (*See* Pl.'s Br. at 7-8).

The seventh and final factor is whether the Amendment is excessive in relation to its regulatory purpose. "The Supreme Court cautions that this excessiveness inquiry 'is not an exercise in determining whether the legislature has made the best choice possible to address the problem it seeks to remedy. The question is whether the regulatory means chosen are reasonable in light of the nonpunitive objective.'" *Doe v. Bredesen*, 507 F.3d at 1006 (quoting *Smith v. Doe*, 538 U.S. 84, 102, 123 S.Ct. 1140, 155 L.Ed.2d 164 (2003)).

Conyers asserts that the "duration of 20 years was based solely on punishing a specific person and not the probability that a former elected official will reoffend." (Pl.'s Br. at 8). She further asserts that "A twenty-year waiting period for only a specific group of convicted people ha[s] nothing to do with whether a person is qualified for an elected office." (*Id.* at 9).

The Attorney General, however, persuasively argues that the disqualification set forth in

the Amendment is not excessive when it is considered in relation to its purpose of ensuring that, for certain elected and appointed officers, the State only places its trust in those who had not already betrayed that trust:

> . . . The disqualification here is not like a disqualification for an entire profession or vocation, as was held to be punitive in *Ex parte Garland*, 71 U.S. 333 (1866). In that case the Court struck down a statute that effectively barred former Confederate officeholders from practicing law, and noted in part,

>> The profession of an attorney and counsellor is not like an office created by an act of Congress, which depends for its continuance, its powers, and its emoluments upon the will of its creator, and the possession of which may be burdened with any conditions not prohibited by the Constitution. Attorneys and counsellors are not officers of the United States, they are not elected or appointed in the manner prescribed by the Constitution for the election and appointment of such officers.

> *Id*. at 378.

> The implication, of course, is that Congress could set conditions on officers of the United States, including disqualifications based on past acts. Indeed, the Federal Constitution contains just such a clause. U.S. Const. Am. XIV § 3.

> *Garland* should not be read to suggest that disqualification from a profession is always punitive. As noted, in *De Veau*, the Supreme Court held that it was not, 363 U.S. at 160. Likewise, in *Hudson*, 522 U.S. at 103, the Supreme Court held that occupational debarment from the banking industry was a civil sanction, not a criminal penalty.  And the Supreme Court has also held that disqualification from the medical profession is a civil remedy, not a criminal penalty. *Hawker v. New York,* 170 U.S. 189, 199–200 (1898). The *Hawker* Court concluded that "such legislation is not to be regarded as a mere imposition of additional penalty, but as prescribing the qualifications for the duties to be discharged and the position to be filled, and naming what is deemed to be, and what is in fact, appropriate evidence of such qualifications." *Id*. at 200.

> And so, even though disqualification from an entire profession may not be punitive in nature, § 8 is drawn far more narrowly than that. It does not attempt to extend to all professions and positions where public trust is important (e.g., attorneys, law enforcement officers, notaries public). In fact, it does not even extend to all government employment—only elective office and employment that "is policy-making or has discretionary authority over public assets." Cf. U.S. Const. Am. XIV § 3 ("any office, civil or military, under the United States, or under any State").

14

And the disqualification is narrow in other ways—it does not extend to all criminal convictions, but only those "involving dishonesty, deceit, fraud, or a breach of the public trust." This cuts against finding a punitive purpose—if the intent were to pile on punishment, why exclude the worst criminal offenses from its scope? The Legislature, evidencing its intent to protect the public from repeated breach of trust, limited this provision to offenses of that character.

And, § 8 does not even extend to all convictions involving dishonesty, deceit, fraud, or breach of public trust, but only those "related to the person's official capacity while the person was holding any elective office or position of employment in local, state, or federal government." It might have been rational for the Legislature to exclude all convicted fraudsters from certain public offices, but instead it drew this provision to only cover those whose misconduct involved breaching the trust the State placed in them. Further, although the period of disqualification is long, it is not a lifetime ban. Cf. U.S. Const. Am. XIV § 3 (no expiration date).

(AG's Br. at 11–14). This Court agrees that this final factor weighs in favor of finding a civil purpose or effect.

Having considered the above factors to analyze its practical effect, this Court concludes that the Amendment does not violate the prohibition against ex post facto laws.

## B. "Fourteenth Amendment Procedural Due Process Violation"

In Count II of her complaint, Conyers asserts a Fourteenth Amendment procedural due process claim.

"The Fourteenth Amendment's Due Process Clause forbids States from "depriv[ing] any person of life, liberty, or property[ ] without due process of law." U.S. Const. amend. XIV, § 1. In practice, we address procedural due process claims in two steps. *Kaplan v. University of Louisville*, 10 F.4th 569, 577 (6th Cir. 2021). First, the Court determines whether a constitutionally protected property interest is at stake. *Id.* If there is, the Court proceeds to the second step that addresses "'whether the procedures attendant upon the deprivation were constitutionally sufficient.'" *Bethel v. Jenkins*, 988 F.3d 931, 942 (6th Cir. 2021) (citation

omitted).  Thus, even if Conyers has a protected property interest in having her name placed on the ballot, she does not have a due process claim if she received sufficient process under the circumstances presented.

Other than giving a person "notice of the case against [her] and [an] opportunity to meet it," there are no hard and fast rules that prescribe the adequacy of process demanded by the Constitution. *Mathews v. Eldridge*, 424 U.S. 319, 335, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976). In determining the necessary procedures under procedural due process, a balancing test is applied wherein the court considers (1) "the private interest that will be affected by the official action;" (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards;" and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews v. Eldridge*, 424 U.S. at 335.

Conyers has not articulated for this Court *what process* Conyers believes that she was entitled to that she did not receive from Clerk Garrett.

The decision letter Clerk Garrett issued on May 13, 2022 reflects that, prior to making her decision on the challenges to Conyers's candidacy, Clerk Garrett: 1) reviewed the two challenges; 2) reviewed the written response to those challenges from Conyers's counsel; and 3) obtained the legal advice of Corporation Counsel.  (ECF No. 1-8).  Thus, Conyers had notice of the challenges to her candidacy and the opportunity to present her arguments in opposition to the challenges.  And all of that was considered by Clerk Garrett, the responsible government official, before she made her decision.

In looking at the way she framed the issues in her Motion for Preliminary Injunction, it appears that Conyers faults Clerk Garrett for having issued a ruling on the challenges to her candidacy prior to some "*judicial legal analysis* of Mich. Const. art. XI, § 8 as applied" to Conyers. (ECF No. 3 at PageID.100) (emphasis added). Conyers's brief then asserts that Clerk Garrett's "decision to render Conyers ineligible *after applying its own hasty constitutional analysis* was improper." (*Id*. at PageID.110) (emphasis added). To the extent that Conyers is taking the position that, in order to afford her sufficient process, Garrett needed to file a lawsuit to obtain a declaratory ruling from a court before ruling on the challenge, Conyers has not directed this Court to any case law that would support that argument.

Conyers fails to show how she can establish that she received an unconstitutionally deficient amount of process. That she *disagrees with* Clerk Garrett's decision does not mean that she received *insufficient process*. The Court concludes that Conyers has not established a likelihood of success as to her due process claim.

## C.    "Violation Of The Fourteenth Amendment Equal Protection"

Count III of Conyers's Complaint asserts an equal protection claim under the Fourteenth Amendment. After citing *Willowbrook v. Olech*, 528 U.S. 562, 564 (2000), Conyers alleges that "by denying Conyers access to the ballot, she was intentionally treated differently than other similarly situated [persons] and there is no rational basis for the disparate treatment." (Compl. at ¶ 53). Conyers further alleges that "there is an equal protection violation as the Defendant County Clerk's actions in rendering Conyers ineligible to be placed on the ballot was motivated solely by a spiteful effort to additionally punish her for crimes that she was previously punished for while determining other people convicted of the same or similar crimes eligible to be placed

17

on the ballot." (*Id*. at ¶ 58). Thus, Conyers is asserting a "class-of-one" equal protection claim in Count III.

The Equal Protection Clause of the Fourteenth Amendment prohibits states from "deny[ing] to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. "Thus, when it appears that an individual is being singled out by the government, the specter of arbitrary classification is fairly raised, and the Equal Protection Clause requires a 'rational basis for the difference in treatment.' " *Engquist v. Oregon Dep't of Agric*., 553 U.S. 591, 602, 128 S.Ct. 2146, 170 L.Ed.2d 975 (2008) (quoting *Willowbrook, supra*.). This is referred to a "class-of-one" equal protection claim. To establish such a claim, the plaintiff must show that he or she "has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Umani v. Mich. Dep't of Corr*., 432 F. A'ppx 453, 461 (6th Cir. 2011). The plaintiff must show she was similarly situated in all relevant respects. *Id*. The plaintiff must also "show that the adverse treatment [s]he experienced was 'so unrelated to the achievement of any combination of legitimate purposes that the court can only conclude that the government's actions were irrational.'" *Id*. "This showing is made either by negating every conceivable reason for the government's actions or by demonstrating that the actions were motivated by animus or ill-will." *Id.*

Conyers's brief devotes just three short paragraphs to her position that she has a likelihood of success on the merits as to her class-of-one claim:

> The "Equal Protection Clause prohibits discrimination by government which either burdens a fundamental right, targets a suspect class, or intentionally treats one differently than others similarly situated without any rational basis for the difference. *Willowbrook v. Olech*, 528 U.S. 562, 564 (2000).

Like the First Amendment violation, the constitutional amendment at issue, prevents Conyers as a former elected official who was convicted of conspiracy to commit bribery, from seeking an elected or appointed position for twenty (20) years. However, a person who is convicted of the exact same crime does not have a waiting period. There is no rational basis for the State of Michigan to make a former politician wait twenty (20) years before becoming eligible for office. Specific to Conyers, the sentencing court recognized that Conyers was a first-time offender and unlikely to ever engage in criminal conduct again. Nevertheless, the constitutional amendment allows a person that was not in office but convicted of the same crimes including those with multiple convictions, recently released to be elected or appointed with no waiting period.

The disparate treatment widens when considering that this constitutional amendment in all practicality, will only be applied to known politicians covered in the media. In other words, there is no way the public can track any other unknown former "employees" who were convicted while in office to be challenged like Conyers. Nor were there any subsequent legislation to execute this amendment. Conyers should prevail on this claim.

(ECF No. 3 at PageID.116-117).

Thus, Conyers's position is that she is being treated differently than what she describes as a group of similarly-situated persons – individuals with felony criminal convictions involving dishonesty, fraud, or breach of trust, but whose convictions were *not* related to their having held any elected or appointed office.  But in order to prevail on her claim, Conyers has to show that she is similarly situated *in all relevant respects*.

The Attorney General persuasively argues that Conyers is not similarly situated in all relevant respects to the group she identifies.  The distinguishing feature of the group that Conyers points to is that their felony convictions *were not committed through an elected or appointed office*.  And the state has articulated rational reasons for the disparate treatment in any event – "the goal of ensuring that public officials do not commit crimes of dishonesty *related to their holding of public office*."  (AG's Br. at 21) (emphasis in original).

While not mentioned in her preliminary-injunction brief, Conyers's complaint also

alleges that "there is an equal protection violation as the *Defendant County Clerk's actions* in rendering Conyers ineligible to be placed on the ballot was *motivated solely by a spiteful effort* to additionally punish her for crimes that she was previously punished for while determining other people convicted of the same or similar crimes eligible to be placed on the ballot." (Compl. at ¶ 58) (emphasis added).  Conyers has not directed the Court to any evidence that would support such an allegation and Conyers advised the Court that an evidentiary hearing was not necessary.

Accordingly, the Court finds that Conyers has not shown a likelihood of success on the merits of this claim.

### D.      "Violation Of The First Amendment"

Finally, in Count IV of her complaint, Conyers asserts a claim for violation of her First Amendment rights.  She contends the Amendment violates her rights under the First Amendment, both the right to free expression and the right to association.  As to this claim, Conyers asserts that the Amendment "restricts voters including Conyers from voting for" "former elected officials in their own communities which is a violation of their fundamental rights.  The Court's intervention is needed in this case, as registered voters, who have expressed their support for Conyers are now prohibited from voting for whom they choose."  (Pl.'s Br. at 10).

The Attorney General has set forth a persuasive argument that the Amendment is subject to a rational-basis review and relies on *Kowall v. Benson*, 18 F.4th 542, 548 (6th Cir. 2021).

In *Kowall*, state legislators brought suit against the Michigan Secretary of State, alleging that a state constitutional provision adopted by voters, imposing term limits for state legislators,

violated their First Amendment rights by barring experienced candidates from running for state

legislative office.  The plaintiff legislators asserted that their claim should be analyzed under the

*Anderson-Burdick* framework.  *Id*. at 546.  The Sixth Circuit disagreed, noting: 1) that the

*Anderson-Burdick* framework is to be used by the court when considering a challenge to a "state

election law"; and 2) that a constitutional amendment providing for term limits is not an

"election law." *Id*.  Rather, it is a "state's attempt to *set qualifications* for its officeholders."  *Id.*

(emphasis added).

The Sixth Circuit noted that "candidates do not have a fundamental right to run for

office" and explained that "[c]ourts routinely apply rational basis" when office-holder

qualifications are at stake.  *Kowall*, 18 F.4th at 547.  Indeed, "[r]estrictions on who may hold

state elective office 'lie at the heart of representative government.'" *Id.* (quoting *Gregory v.*

*Ashcroft*, 501 U.S. 452, 462 (1991)).  "As qualifications for office fall squarely in that camp,

rational basis is appropriate."  *Id.*

Thus, this Court asks whether the Amendment at issue here is rationally related to a

legitimate government interest.

As the Attorney General notes, Michigan has a valid interest "in structuring its

government as it sees fit." *Kowall, supra*, at 548.  She also explains that the restriction on

holding public office is tailored to a specific and important concern –  public corruption.  The

state has advanced a rational basis for the Amendment – "the goal of ensuring that public

officials do not commit crimes of dishonesty *related to their holding of public office*."   (AG's

Br. at 21).  This Court therefore concludes that Conyers has not shown an likelihood of success

on the merits as to Count IV.

21

Accordingly, the Court concludes that Conyers has not established a likelihood of success on the merits as to any of her four claims in this action.  As such, this Court need not consider the remaining factors and concludes that Conyers has not met her burden of establishing that she is entitled to the preliminary injunctive relief requested.

Dated: June 3, 2022                           s/Sean F. Cox                                    
                                              Sean F. Cox
                                              United States District Judge